UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────x

MICHELLE HAMLIN, by infant under fourteen
years of age, by her father and natural guardian,
CARSON HAMLIN,

      Plaintiff,

  -against-                                       03 Civ. 4850 (CM)

CITY OF PEEKSKILL BOARD OF EDUCATION,
"Jane Doe No. 1," GREEN CHIMNEYS
CHILDREN'S SERVICES, "Jane Doe No. 2,"
MILES SQUARE TRANSPORTATION, INC.,
"John Doe No. 1," "John Doe No. 2," and
"John Doe No. 3,"

      Defendants.

────────────────────────────────────────x

MEMORANDUM DECISION AND ORDER GRANTING
ALL DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT DISMISSING THE COMPLAINT

McMahon, J.:

      Michelle Hamlin is a teenager who lives in the City of Peekskill. Michelle is a special needs child. She attends a residential school run by Green Chimneys Children's Services ("Green Chimneys") by arrangement with, and at the expense of, the Peekskill City School District ("Peekskill").

      From time to time, the Peekskill children at Green Chimneys were transported from that school to their homes for weekend visits, on buses contracted for by the school district. During one such trip, which took place on April 22, 2002, plaintiff claims that she was coerced into

1

committing a sexual act by another student, Michael Cunningham. Plaintiff reported this incident to her parents, who have sued Peekskill, Green Chimneys and the private bus company that provides transportation to Peekskill students on their daughter's behalf. Plaintiff has also sued a number of John and Jane Doe parties, but none has been identified and no motion to add named individuals has been presented to the Court. Since more than three years have passed from the date of the alleged incident, any claims against these unnamed parties – whether under federal or state tort law – are time barred.

All defendants have moved pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the complaint. For the following reasons, all motions are granted.

**I. STANDARDS FOR SUMMARY JUDGMENT**

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56 (c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). In addressing a motion for summary judgment, the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in its favor. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. Balderman v. United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must present

"specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[1] The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

Under this standard, all defendants are entitled to dismissal of the claims asserted against them under federal law.

**II. DISCUSSION**

The undisputed facts are set forth above. To the extent it is necessary to refer to additional facts, those facts will be discussed in the context of the particular Defendant's motion for summary judgment.

**A. The Motion of Defendant City of Peekskill Board of Education**

Peekskill moves to dismiss the federal claims on several grounds. It argues that it did not

---

[1] Plaintiff's Rule 56. 1 Statement fails to comply with the Local Rules of this Court, in that (1) it does not respond to defendants' Rule 56.1 Statements; (2) it does not contain a citation to the record for each assertion of fact. The Court has not located any Rule 56. 1 Statement in the motion papers submitted by Defendant Peekskill; defendants Mile Square and Green Chimneys did manage to comply with the Court's Local Rules.

deprive plaintiff of any rights secured to her under either the Fourth or Fourteenth Amendments; that it did not maintain any policy or practice that evidenced deliberate indifference to plaintiff's rights; and that in any event, plaintiff's claim does not lie under §1983, but rather under Title IX.

It is, frankly, difficult to understand the nature of plaintiff's claim against Peekskill. It appears to be as follows: the girl lived in Peekskill and was originally educated in the Peekskill Public Schools; she was attending Green Chimneys at the behest of the Peekskill School District;[2] Peekskill had arranged for her transportation home from Green Chimneys on the weekend in question; an incident occurred between plaintiff and another student on the private bus that was provided by Peekskill for that purpose; therefore, Peekskill is responsible for any harm that befell Michelle as a result of this incident.

The premise does not hold up.

The Constitution does not ordinarily require the State to protect citizens from the harmful acts of private persons, such as the other student involved in this incident. DeShaney v. Winnebago County Dept. Of Social Services, 489 U.S. 189, 198, 109 S.Ct. 998, 103 L. Ed. 2d 249 (1989). Only last month, the United States Supreme Court reaffirmed this rule in Town of Castle Rock v. Gonzales, 125 S.Ct. 2796 (2005), holding that police officers cannot be sued under 42 U.S.C. §1983 for failing to enforce an order of protection.

Of course, there are exceptions to the general rule. In DeShaney, 489 U.S. at 200, the

---

[2] The record does not indicate whether Michelle was a classified child attending Green Chimneys pursuant to an agreed-upon pendency placement under the Individuals with Disabilities in Education Act ("IDEA"). However, there is no dispute that Michelle was voluntarily enrolled at Green Chimneys by the City of Peekskill Committee of Special Education ("CSE"), and the city was paying for Michelle Hamlin's tuition and transportation. See Minter Affidavit at ¶4; Defendant Green Chimneys' Rule 56.1 Statement at ¶¶4-5; Complaint ¶¶20-22.

4

Supreme Court held that an affirmative duty to protect arises "when the State by affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." However, the facts of this case present no such "affirmative exercise of power" or "restraint" on Michelle's liberty. Compulsory attendance at school and transportation on a school bus have both been held not to fall within that exception. D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1372-73 (3d Cir. 1992) (en banc)("By requiring [Plaintiff] to attend assigned classes at [public school] as part of her high school educational program, and authorizing officials to engage in disciplinary control over the students, the school defendants did not restrict [Plaintiff's] freedom to the extent that she was prevented from meeting her basic needs."); Sargi v. Kent City Board of Education, 70 F.3d 907, 911 (6th Cir. 1995) ("Although options may be limited for practical or financial reasons, parents can weigh for themselves the" benefits and consequences of placing their child in a school bus, and "the need for an alternative means of transportation.").

The State also assumes a responsibility it would not otherwise have when it takes some affirmative step to expose the victim "to any danger to which she was not already exposed." Sargi, 70 F.3d at 913. But there is no evidence in the record that Peekskill took any affirmative action that exposed plaintiff to any danger. It arranged generally for Michelle's bus transportation by contracting with a well-known transportation provider, pursuant to a contract that required the bus company to comply with all applicable laws. It is undisputed that the bus was supervised by an adult monitor as well as a driver. There is no evidence that Peekskill was ever placed on notice by anyone that Michelle had been abused, by Michael Cunningham or any

5

other student, or that there were any special issues relating to her transportation (such as any need to keep her away from boys, see Green Chimneys discussion, *infra*).

To the extent that any defendant was directly responsible for what went on in the bus, it was defendant Mile Square. But Peekskill could not be held liable for any defalcation by Mile Square under §1983 under a theory of respondeat superior. And there is no evidence in this record tending to show Monell liability. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978).

Finally, defendant is correct that claims of sexual harassment in the schools are actionable only under Title IX. Bruneau ex rel. Schofield v. South Kortright Cent. School Dist., 163 F.3d 749 (2d Cir. 1998).

The federal claim against Peekskill is dismissed with prejudice. I decline to exercise pendent jurisdiction over state law claims asserted against Peekskill, and so dismiss those claims without prejudice.

**B. The Motion of Defendant Mile Square Transportation Company**

Mile Square is a private company that provides bus services to a number of schools and camps in and around Westchester County. It argues that no federal claim lies against it because Mile Square is not a state actor.

Mile Square is correct.

Claims under 42 U.S.C. § 1983 lie only against state actors – that is, persons acting under color of state law – who deprive the plaintiff of a right, privilege or immunity secured to her by the United States Constitution. Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir.

2002); Albert v. Carovano, 824 F.2d 1333, 1338 (2d Cir. 1987). It is well settled that a state contractor and its employees do not become state actors simply because they are carrying out a state-sponsored program or are being compensated by the State. Rendell-Baker v. Kohn, 457 U.S. 830, 840-841, 102 S.Ct. 2764, 73 L. Ed. 2d 418 (1982); Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L. Ed. 2d 534 (1982). In particular, it has been held that private companies that provide transportation services to students under contract with their school districts are not state actors, because they do not, "perform[ ] a function that has been 'traditionally the exclusive prerogative of the state' and there was no state regulation that 'compelled or even influenced' the conduct which is alleged to have violated plaintiffs' constitutional rights. . . ." Black by Black v. Indiana Area School Dist., 985 F.2d 707, 711 (3d Cir. 1993) (quoting Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L. Ed. 2d 45 (1961)). Providing transportation to students is not and never has been the *exclusive* prerogative of the State. The mere fact that a private party fulfills the school district's obligation to provide transportation to school children does not convert the conduct of these parties into state action. Stillwell v. Mayflower Contract Services, Inc., No. 94 C 7253, 1995 WL 368898 (N.D. Ill. 1995).

Plaintiff argues that Mile Square became a state actor because the State of New York regulates the provision of school bus services by establishing requirements for the position of school bus monitor. She is incorrect. While the contract between Mile Square and Peekskill requires Mile Square to abide by federal, state and local law pertaining to the employment of bus monitors, that does not convert the private bus company into a state actor. Black by Black, *supra*, 985 F.2d at 709-10. The Supreme Court has consistently held that "[t]he mere fact that a

7

business is subject to state regulation does not by itself convert its action into that of the State." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350, 95 S.Ct. 449, 42 L. Ed. 2d 477 (1974). In Jackson, the Supreme Court noted that "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. Likewise, in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 176-77, 92 S.Ct. 1965, 32 L. Ed. 2d 627 (1972), the Supreme Court denied that state action was involved because a private organization that discriminated on the basis of race held a liquor license issued by the state. The court noted that the license "cannot be said to in any way foster or encourage racial discrimination. Nor can it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise." Id. Therefore, the mere fact that Miles Square is regulated by the State does not mean it is a state actor. See Jackson, 419 U.S. at 350; S.F. Arts & Athletics, Inc. v. United States Olympic Comm., 483 U.S. 522, 543-44, 107 S.Ct. 2971, 97 L. Ed. 2d 427 (1987); Cranley v. National Life Ins. Co. of Vermont, 318 F.3d 105, 112 (2d Cir. 2003); Gilinsky v. Columbia University, 488 F. Supp. 1309, 1312 (S.D.N.Y. 1980).

 A private bus company may be considered a state actor if it acted in joint participation with the State to deprive someone of a constitutional right. Hill v. New York City Bd. of Educ., 808 F. Supp. 141, 152 (E.D.N.Y. 1992). But there is no evidence here that Mile Square acted in concert with any state actor to achieve an unconstitutional result.

 For this reason, Mile Square's motion for summary judgment is granted and plaintiff's federal claim against defendant Mile Square is dismissed with prejudice.

 I decline to exercise pendent jurisdiction over any state law claims against Mile Square

and dismiss those claims without prejudice.

**C. The Motion of Green Chimneys Children's Services**

Finally, Green Chimneys, a private school that provides educational services to children with special educational and emotional needs, moves for summary judgment dismissing the claim against it, on the ground that it, too, is not a state actor. The court grants its motion.

Plaintiff alleges that Defendant Green Chimneys knew that Michelle (who was attending the Green Chimneys school) had difficulty with boys. Specifically, Plaintiff cites an incident in gym class, in October 2001, which prompted Green Chimneys to take Michele out of gym class, because she "got very excited and hyper while in gym." See Minter Affidavit, Ex. C. Plaintiff's theory appears to be that Green Chimneys violated Michelle's constitutional rights either (1) by putting her on the bus with boys, or (2) by failing to advise Peekskill and/or Miles Square of the need to pay special attention to her on a bus with boys.

Plaintiff's effort to sue Green Chimneys under §1983 fails for the same reason as does her claim against Miles Square. Green Chimneys is a private school. Therefore, in order to sustain a §1983 claim against it, Plaintiff must prove that Green Chimneys is a state actor. No evidence in the record suggests Green Chimneys acted under the color of state law in this instance.

In determining when ostensibly private actors (e.g., private schools) can be found to be state actors, and thus liable under §1983, the Supreme Court has observed that the "ultimate issue" is whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" Rendell-Baker, 457 U.S. at 838 (quoting Lugar v. Edmondson Oil. Co., 457 U.S. 922,

937, 102 S.Ct. 2744, 73 L. Ed. 2d 482 (1982)). "What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no single fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 184 L. Ed. 2d. 807 (2001).

There are several doctrines that provide a framework through which the acts of a private school may be found to comprise state action. The first is whether, with respect to the activity at issue, the private school engaged in a traditionally exclusive public function. Id. at 295; see also Rendell-Baker, 457 U.S. at 842 (holding that education is not a traditionally exclusive public function). The second is whether "the private school is 'entwined' with the government." Brentwood Academy, 531 U.S. at 295; see also St. Ledge v. Area Co-op. Educ Servs., 228 F. Supp. 2d 66, 72 (D. Conn. 2002) (holding that pervasive entwinement with the State made educational center "a state entity for all purposes"). The third is whether the school "is subject to governmental coercion or encouragement." Brentwood Academy, 531 U.S. at 295; see also Coleman v. Wagner College, 429 F.2d 1120, 1125 (2d Cir. 1970); Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968). Last if the private school is "willingly engaged in a joint action with the government," it can be a state actor. Brentwood Academy, 531 U.S. at 295; see also Milonas v. Williams, 691 F.2d 931, 940 (10th Cir. 1982) (the Tenth Circuit concluded that the State "ha[d] so insinuated itself with the [private school] as to be considered a joint participant in the offending actions.").

For the following reasons, I find nothing in the record that indicates Green Chimneys was acting under color of state law nor should be considered a state actor.

First, Plaintiff claims that Green Chimneys is a state actor because it performed a public function when it "accepted and retained children referred by a school who had emotional problems and learning disabilities." Minter Affidavit at ¶10. Plaintiff is incorrect. Green Chimneys educates disabled children at public expense, and there is little question that this function serves the public. But the mere fact that a private entity performs a function that serves the public does not render its acts under color of state law. Rendell-Baker, 457 U.S. at 842. In order for Green Chimneys to be a state actor it must perform a public function that is "traditionally the exclusive prerogative of the state." Id. (quoting Jackson, 419 U.S. at 353).

Plaintiff has not made the requisite showing that Green Chimneys provides a function that is *exclusively* the prerogative of the State. Despite the importance of public education in American society, education is not considered to be exclusively the prerogative of the State. Rendell-Baker, 457 U.S. at 842; see also Powe, 407 F.2d at 80 ("Education has never been a state monopoly in this country"); Logiodice v. Trustees of Main Central Institute, 296 F.3d 22, 26-27 (1st Cir. 2002) ("Obviously, education is not and never has been a function reserved to the state. . . schooling . . . is regularly and widely performed by private entities; this has been so from the outset of this country's history."); Johnson v. Pinkerton Academy, 861 F.2d 335, 338 (1st Cir. 1998) ("history shows that educating children of high school age was not traditionally an exclusive public function"); Robert S. v. Stetson School, Inc., 256 F.3d 159, 165-66 (3d Cir. 2001) (holding that private school specializing in treatment and education of juvenile sex offenders was not providing a function that is traditionally exclusively the province of the State).

11

Nor does the fact that Green Chimneys received funding from the State mean it is a state actor. See, e.g., Rendell-Baker, 457 U.S. at 840-41; Blum, 457 U.S. at 1004; Weise v. Syracuse University, 522 F.2d 397, 405 (2d Cir. 1975); Grafton v. Brooklyn Law School, 478 F.2d 1137, 142 (2d Cir. 1973); Winsey v. Pace College, 394 F. Supp 1324 (S.D.N.Y. 1975); Grossner v. Trustees of Columbia University, 287 F. Supp 535, 547-48 (S.D.N.Y. 1968); Curto v. Smith, 248 F. Supp.2d 132, 140 (N.D.N.Y. 2003); Robert S., 256 F.3d at 165-66. "Otherwise, all kinds of contractors and enterprises, increasingly dependent upon government business for much larger proportions of income than those here in question, would find themselves charged with 'state action' in the performance of all kinds of functions we still consider and treat as essentially 'private' for all presently relevant purposes." Grossner, 287 F. Supp. at 547- 48.

Plaintiff may intend to argue that Green Chimneys became a state actor because the school district that is required by law to offer Michelle a free appropriate public education (Peekskill) sent her at public expense to the private school.[3] But the fact that Peekskill chose to fulfill its duty by sending MIchelle to a private school that could more appropriately deal with her special needs does not transform the private school into a state actor.[4]

---

[3] The Court has had to divine much of Plaintiff's arguments without much help, since the briefs filed on the motion are wholly inadequate. I have tried to figure out what Plaintiff intended to argue and to address it.

[4] This case presents no problem of a State encouraging the formation and functioning of 'private' schools in order to evade constitutional requirements with respect to public ones. See South Carolina State Board of Education v. Brown, 393 U.S. 222, 89 S.Ct. 449, 21 L. Ed. 2d 391 (1968); Louisiana Education Comm'n v. Poindexter, 393 U.S. 17, 89 S.Ct. 48, 21 L. Ed. 2d 16 (1968); Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L. Ed. 2d 256 (1964).

Second, Plaintiff argues Green Chimneys was acting under color of state law because its conduct demonstrates "pervasive entwinement to the point of largely overlapping identity" between the State and Green Chimneys. Brentwood Academy, 531 U.S. at 303. I disagree.

In Brentwood, 531 U.S. 288, the Supreme Court found that the Tennessee Secondary School Athletic Association ("Association"), which comprised member schools in the State of Tennessee and regulated interscholastic sports among its members, engaged in state action when it enforced a rule concerning the recruitment of student-athletes. In coming to this conclusion, the Court made several important factual findings. First, eighty-four percent of the member schools of the Association were public schools. Id. at 290-291. Second, the Association acted through the public school's representatives and drew members of its board from them. Id. Third, the Association was largely funded by the public schools' dues and income received in their stead. Id. Fourth, the Association had "historically been seen to regulate in lieu of the State Board of Education's exercise of its own authority." Id. Finally, there was extensive evidence of a "close relationship between [the Association] and the state in two categories: 'bottom up' public influence over the association via the participation of its public school members in the [Association] leadership, and 'top down' influence exercised by state officials entitled to serve on the [Association's] board. Id. at 300-301. As a result, the Court found that the "nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards" to that entity. Id. at 298.

13

Brentwood is clearly distinguishable from this case. Green Chimneys is a private school. There is no evidence of the kind of "top down" nor "bottom up" relationship between it and Peekskill that was so prevalent in Brentwood.

The Second Circuit has also found evidence of "pervasive entwinement," when the following requirements are met: "(1) the government created the corporate entity by special law, (2) the government created the entity to further governmental objectives, and (3) the government retains 'permanent authority to appoint a majority of the directors of the corporation' will the corporation be deemed a government entity for the purpose of the state action requirement." Hack v. President and Fellows of Yale College, 237 F.3d 81, 84 (2d Cir. 2000) (quoting Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 400, 115 S.Ct. 961, 130 L. Ed. 2d 902 (1995)). In such cases, the private entity may be "fairly considered" a state actor. Lebron, 513 U.S. at 400.

Here, there is no evidence that the government created Green Chimneys by any "special law," or for the purpose of furthering "governmental objectives." Nor is there any evidence that the State controls any appointments to its Board. To the contrary, the Defendant Green Chimneys' unchallenged Rule 56.1 Statement indicates that Green Chimneys is a "private educational and social services entit[y], operating under state charter, and under the authority of a privately selected Board of Directors independent of any state or governmental agency." at ¶9. There is no evidence that any public official is employed by Green Chimneys. Likewise, there is no evidence that any public officials control or influence the decision making process or the actions of Green Chimneys. And there is no evidence that the State retains "permanent authority to appoint a majority of the directors" of Green Chimneys. Brentwood Academy, 531

14

U.S. at 303. As a result, I find no evidence upon which a reasonable jury could find "pervasive entwinement to the point of largely overlapping identity" between the State and Green Chimneys. Id.

Third, Plaintiff argues that Green Chimneys was acting under color of state law because it is "heavily regulated by the state." Plaintiff offers no evidence about the extent or type of regulation to which Green Chimneys was subject, but even if she did, Plaintiff's proposition would not stand.

State regulation of an institution of higher education is a factor that may be taken into consideration in determining whether the institution's conduct amounts to state action. See, e.g., Powe, 407 F.2d at 32; Coleman, 429 F.2d at 1123. However, "[e]ven extensive regulation by the government does not transform the actions of the regulated entity into those of the government." S.F. Arts & Athletics, Inc., 483 U.S. at 543-44; Jackson, 419 U.S. at 350; Cranley, 318 F.3d at 112; see also Gilinsky, 488 F. Supp. at 1312 ("merely being subject to the laws of the State or the United States is clearly insufficient to show that action in violation of those laws is state action. Similarly, 'tacit' approval by the State does not convert action by a private party into state action."). The State's regulation must "evidence governmental coercion or encouragement," Brentwood Academy, 531 U.S. at 295, over the activity that allegedly caused the constitutional injury. Powe, 407 F.2d at 81 ("the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon the plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be subject of the complaint"); Weise, 522 F.2d at 405; Wahba v. New York University, 492 F.2d 96, 100 (2d Cir. 1974). Specifically, if the State's regulation of the private school "has

15

exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State," then the private school may be deemed to be acting under color of state law. Blum, 457 U.S. at 1004. In other words, a private entity is not "a state actor where its conduct is not compelled by the state but is merely permitted by state law." Cranley, 318 F.3d at 112.

The Second Circuit has held that "the determination of state action must be based on a particularized inquiry focusing on whether there is 'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself.'" New York City Jaycees, Inc. v. United States Jaycees, Inc., 512 F.2d 856, 858-859 (2d Cir. 1975) (quoting Jackson, 419 U.S. at 349).

On the record before me, Plaintiff has not even raised an arguable question about Green Chimneys' status as a state actor. To support her claim, Plaintiff simply states, in conclusory fashion, that Green Chimneys is "heavily regulated." However, the Plaintiff offers no evidence, beyond mere assertion and assumption, that Green Chimneys is in fact regulated – specifically in matters such as gender segregation following incidents like the one in gym class – and suggests no way that any State regulation may have "coerced" or "encouraged" Green Chimneys to put Michelle on a bus with boys if the school in fact knew she should be separated from boys. Without more, Plaintiff's allegations are comparable to the claims raised and rejected in Coleman, *supra*, 429 F.2d at 1120; Grafton, *supra*, 478 F.2d at 1141-42; Wahba, *supra*, 492 F.2d at 100; and Weise, *supra*, 522 F.2d at 405, and therefore, must be rejected here as well.

Plaintiff tries to distinguish Rendell-Baker, by noting that, "contrary to Rendell-Baker, the placement of the infant plaintiff on the small school bus with only males,[sic] involves the

16

very school activities that are regulated by the state. i.e., the school's care and handling of its students." Minter Affidavit at ¶18. But Plaintiff simply offers no evidence to support this conclusion. Plaintiff fails to show how the State regulates the placement of a child on a small school bus with males, and I know of no state regulation that compelled Green Chimneys either to separate Michelle from boys or to give her special unisex transportation.[5]

The case law is very clear that without more, even "extensive regulation by the government does not transform the actions of the regulated entity into those of the government." S.F. Arts & Athletics, Inc., 483 U.S. at 543-44; Jackson, 419 U.S. at 350; Cranley, 318 F.3d at 112; Gilinsky, 488 F. Supp. at 1312. The evidence Plaintiff offers in support of her claim does not even provide proof as to the extent or nature of the state regulation, much less provide evidence that the state regulation "fostered or encouraged" Green Chimneys' conduct. Blum, 457 U.S. at 1004; Moose Lodge, 407 U.S. at 176-77. For example, Plaintiff contends that the fact that a case worker at Green Chimneys "was responsible for walking the infant to the school bus and seeing that she boarded same" that that was sufficient evidence of state regulation. Minter Affidavit at ¶18. But plaintiff offers no evidence this case worker is in any way affiliated with

---

[5] Although the facts concerning Michelle and boys are of marginal relevance – at best – to the legal issue of state action, I note that the record contains evidence of only one incident that led to separating Michelle from boys. The incident took place in October 2001 – six months prior to the April 2002 ride that is the subject of this lawsuit. Plaintiff offered no evidence of any ongoing issue. She did not offer evidence that Michelle was attending only sex-segregated academic classes in the Spring of 2002, or that she was participating only in sex-segregated extra-curricular activities at that time. She did not offer any evidence about the composition of passengers on bus trips to and from Peekskill earlier in the 2001-2002 academic year or whether there had been incidents on any of those rides. In fact, plaintiff did not even offer any evidence that Michelle's banishment from gym class in October 2001 extended into April 2002. On such a sparse record, I fail to see how a reasonable trier of fact could conclude that Michelle ought not have been put on a monitored school bus with boys.

17

the State! Plaintiff never attempts to explain how the case worker's involvement relates to or constitutes evidence of state regulation. As a result, there is no evidence upon which a reasonable jury could conclude that Green Chimneys' conduct should be "fairly treated as that of the State itself." Jackson, 419 U.S. at 351.

Fourth, Plaintiff offers no evidence Green Chimneys was "willingly engaged in joint action with the government." Brentwood Academy, 531 U.S. at 295; See, Milonas, 691 F.2d at 940. It appears the relationship between Peekskill and Green Chimneys was purely contractual. The mere fact that Green Chimneys and the government are involved in educating children does not mean that Green Chimneys was "acting in concert" with a state actor (Peekskill) when it put Michelle in a bus with boys – the activity that caused the injury. Peekskill simply sent special needs children to Green Chimneys. There is no evidence that Peekskill had any control over what happened to the children while there, and specifically over how they were put on the school bus. Therefore, Green Chimneys' conduct cannot be "fairly treated as that of the State itself." Jackson, 419 U.S. at 351.

This court does not opine as to whether Green Chimneys could ever be considered a state actor. The court simply finds that, on this record, there is no evidence to indicate that Green Chimneys was acting under color of state law when it relinquished custody of Michelle Hamlin to Mile Square on the weekend in question. This means Plaintiff's federal claims against Green Chimneys must be dismissed. Once again, I decline to entertain any pendant state law claims, which are dismissed without prejudice.[6]

---

[6] Because I find there was no state action, I do not need to address whether there existed a "special relationship" between Green Chimneys and the Plaintiff.

## Conclusion

All three pending motions for summary judgment are granted. The federal claims against defendants Peekskill, Mile Square and Green Chimneys are dismissed with prejudice. The state law claims against these defendants are dismissed without prejudice, as the Court declines to exercise pendent jurisdiction over them.

The Clerk of the Court is directed to dismiss the complaint as to all defendants, deny any other outstanding motions as moot in view of this decision, and close the file.

This constitutes the decision and order of the Court.

Dated: July 13, 2005

_____
U.S.D.J.

BY FAX TO ALL COUNSEL